UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ROY THOMAS PHILLIPS,

                Petitioner,

v.                                  Case No:  6:19-cv-1782-JA-GJK
                                              (6:16-cr-198-JA-GJK)

UNITED STATES OF AMERICA,

                Respondent.
_____/

## ORDER

This cause is before the Court on the Amended Motion to Vacate, Set Aside, or Correct Sentence ("Amended Motion to Vacate," Doc. 6) filed by Petitioner pursuant to 28 U.S.C. § 2255. The Government filed a Response in Opposition to the Motion to Vacate ("Response," Doc. 10) in compliance with this Court's instructions and with the *Rules Governing Section 2255 Proceedings for the United States District Courts*. Petitioner filed a Reply (Doc. 13) to the Response. For the following reasons, the Court concludes that Petitioner is not entitled to relief on his claims.

### I.    PROCEDURAL BACKGROUND

A Grand Jury charged Petitioner by Indictment with two counts of aiding and abetting the production of child pornography (Counts One and Two), one

count of   receipt of child pornography (Count Three), and one count of possession of child pornography (Count Four). (Criminal Case No. 6:16-cr-198-JA-GJK, Doc. 22).[1]

Petitioner subsequently entered into a Plea Agreement (Criminal Case, Doc. 46) in which he agreed to enter a guilty plea to Counts One and Two of the Indictment. The Court held a hearing on the plea and accepted it. (Doc. 48). The Court then entered a Judgment in a Criminal Case (Criminal Case, Doc. 72) in which Petitioner was sentenced to imprisonment for a total term of 720 months, to be followed by supervised release for a total term of 10 years. The Eleventh Circuit Court of Appeals affirmed. (Criminal Case, Doc. 88).

## II.   LEGAL STANDARDS

### A.    Relief Under Section 2255

Section 2255 permits a federal prisoner to bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(a).  A petitioner is entitled to an evidentiary hearing if he "alleges facts that, if true, would entitle him to relief." *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015) (citation and quotation omitted).  However, "a defendant must support his allegations with at least a proffer of some

---

[1] Criminal Case No. 6:16-cr-198-JA-GJK will be referred to as "Criminal Case."

2

credible supporting evidence." *United States v. Marsh*, 548 F. Supp. 2d 1295, 1301 (N.D. Fla. 2008). The Court "is not required to grant a petitioner an evidentiary hearing if the § 2255 motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Rosin*, 786 F.3d at 877 (citation and quotation omitted).

## B.   Standard for Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a defendant must establish two things: (1) "counsel's performance was deficient," meaning it "fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). To satisfy the deficient-performance prong, the defendant must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment. *Id.* at 687. The defendant must rebut the strong presumption that his counsel's conduct fell within the range of reasonable professional assistance. *Id.* at 689.

In *Hill v. Lockhart*, 474 U.S. 52, 58 (1985), the Supreme Court held that "the two part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." A defendant may satisfy the prejudice prong by showing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to

3

trial." *Hill*, 474 U.S. at 59. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694.

Further, "a defendant's knowing and voluntary guilty plea waives all nonjurisdictional defects in the proceedings." *Duhart v. United States*, 556 F. App'x 897, 898 (11th Cir. 2014).   However, "a defendant can still maintain an attack on the voluntary and knowing nature of the guilty plea itself. Such an attack can be based upon ineffective assistance of counsel claims that go to the knowing and voluntary nature of the plea." *Id.*

## III.   ANALYSIS

### A.    Claim One

Petitioner states that the appeal waiver set forth in the Plea Agreement "is not enforceable" and "was not entered into knowingly." (Doc. 6 at 4). Petitioner claims the Court "did not properly explain the waiver or its exceptions" and that he "understood that an appeal of his sentence was expressly permitted because the sentence was above the 15-year statutory minimum." (*Id.* at 12).

The Plea Agreement and the plea colloquy provided Petitioner with detailed and specific information pertaining to the scope of the appeal waiver and the conduct that would be considered at sentencing. The Plea Agreement advised Petitioner about the maximum sentence he faced and the sentence

4

appeal waiver. (Criminal Case, Doc. 46 at 2-3, 18). Specifically, Petitioner waived the right to appeal his sentence on any ground,

> including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution . . .

(*Id.* at 18). The Plea Agreement also informed Petitioner of the Court's broad discretion in sentencing and that his conduct in Counts One and Two would be considered at sentencing. (*Id.* at 2-4). Petitioner initialed each page and signed the Plea Agreement acknowledging that he understood the terms of the agreement.

A review of the record reveals that Petitioner's plea was knowingly and voluntarily made. The lengthy plea colloquy confirms Petitioner understood the nature of the charges against him, the sentence he faced, and the consequences of his plea. (Criminal Case, Doc. 81 at 7-8, 10-11, 18). Petitioner confirmed that he had discussed the case with his counsel, that he understood the elements that the Government would have to prove if he went to trial, and that he agreed that the Government could present competent evidence proving

5

each of the elements of the offense. (*Id.* at 7-8, 20-21). He also agreed as to the factual basis contained in the Plea Agreement. (*Id.* at 18-21).

Petitioner acknowledged that he was pleading guilty because he was in fact guilty, that no one had threatened or coerced him into pleading guilty, and that his plea was made knowingly and voluntarily. (*Id.* at 8, 18). The Court presumes the truth of these statements at the plea colloquy, and Petitioner has not satisfied his heavy burden of showing that they were false.

Further, during the plea colloquy, the Court explained that Petitioner faced a statutory maximum of thirty years' imprisonment, that the recommendations in the Plea Agreement were not binding on the court, and that any estimate by counsel as to the guideline range may not be accurate. (*Id.* at 10-11, 13-14). The Court explained that Petitioner was giving up his right to appeal, with the limited exceptions that he could appeal if he was sentenced " in excess of the statutory minimum or a sentence in violation of the law or in excess of the guidelines." (*Id.* at 11-12). The Court also explained that Petitioner was giving up his "right to appeal the adjudication of [his] guilt." (*Id.* at 18).

Petitioner also acknowledged that he had signed and initialed his Plea Agreement, that he read and understood the Plea Agreement, and that he had no questions concerning his guilty plea. (*Id.* at 8-9, 22). Petitioner's

6

statements made under oath in open court that he understood his appellate rights and that the Government could prove the facts underlying Counts One and Two carry a strong presumption of validity. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."); *see also United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994) ("There is a strong presumption that the statements made during the colloquy are true.").

Although the Court misstated at the change of plea hearing that Petitioner could appeal if he was sentenced in excess of the "statutory minimum," the Plea Agreement specifically indicated that Petitioner could appeal only if the sentence exceeded the "statutory maximum penalty." (Criminal Case, Doc. 46 at 18). Petitioner stated that he had read the Plea Agreement, discussed it with his attorney, and understood its terms. Moreover, Petitioner did not express any confusion with regard to the appeal waiver based on the Court's misstatement or on any other matter. The appeal waiver was valid.

Most importantly, Petitioner had the benefit of an appeal. Petitioner appealed his sentence, and the Eleventh Circuit Court of Appeals considered his arguments on the merits when it affirmed his sentence. In fact, the Government moved to dismiss Petitioner's appeal based on the sentence appeal

waiver. The Eleventh Circuit denied the motion to dismiss: "Because Phillips's challenges to his sentence fail on the merits, we need not address his sentence appeal waiver. The government's motion to dismiss the appeal is therefore denied." (Criminal Case, Doc. 88 at 2 n.1). Consequently, Claim One is denied.

### B.   Claims Two, Three, Four, Five, and Six

Petitioner alleges that counsel was ineffective for failing to file a pretrial motion to suppress certain evidence based on the following:  (1) the National Center for Missing and Exploited Children ("NCMEC") reviewed stored communications without a search warrant (Claim Two); (2) the "Yahoo warrant" was overly broad and was authorized by a Magistrate Judge in the Middle District of Florida even though the seized evidence was in the Northern District of California (Claim Three); (3) the "hotmail warrant" was overly broad and was authorized by a Magistrate Judge in the Middle District of Florida even though the seized evidence was in the Northern District of California (Claim Four); the evidence gathered from his residence violated his Fourth Amendment rights because there was no valid probable cause (Claim Five); and the "evidence gathered by the FBI from a 'cybertip' forwarded to them by the" NCMEC violated his Fourth Amendment rights because the cybertip "did not contain any images of child pornography or any images of any kind" (Claim Six).  (Doc. 6 at 4-7).

8

A "defendant's plea of guilty, made knowingly, voluntarily, and with the benefit of competent counsel, waives all nonjurisdictional defects in that defendant's court proceedings." *United States v. Yunis*, 723 F.2d 795, 796 (11th Cir.1984). " This includes any claim of ineffective assistance of counsel unless the deficient performance relates to the voluntariness of the plea itself." *Bullard v. Warden, Jenkins Corr. Ctr.*, 610 F. App'x 821, 824 (11th Cir. 2015). Here, Petitioner does not contend that his plea was involuntary due to his counsel's failure to file a motion to suppress, so the ineffectiveness claim is waived by the plea.

Further, these claims lack merit.  The impetus to the investigation regarding Petitioner's illicit conduct was a cyber-tip from Yahoo! to the NCMEC. (Doc. 10-1).  Yahoo! is a private actor, which conducted a private search of the email account. *See United States v. Cameron*, 699 F.3d 621, 637-38 (1st Cir. 2012) (holding that Yahoo! Inc. did not act as an agent of the government in searching emails and sending reports to NCMEC).  Therefore, its searches of Petitioner's accounts did not violate the Fourth Amendment. *Id.* at 638.

Yahoo! reported to the NCMEC that it had viewed email conversations discussing the live transmission of child sexual abuse in the Philippines. (Doc. 10-1).  A NCMEC reviewer then viewed the emails and looked up the IP

address. (*Id.*). NCMEC generated and forwarded a report including the emails to the FBI, which then reviewed the emails and obtained federal search warrants for Petitioner's Yahoo! and Hotmail accounts. Petitioner has not shown that either the NCMEC or the FBI's search exceeded the scope of Yahoo!'s private search, and, therefore, Petitioner's Fourth Amendment rights were not violated.

Next, the Yahoo! and Hotmail search warrants were not "overly broad," as they stated with particularity the items to be seized and limited those items to "fruits, contraband, evidence and instrumentalities of violations of 18 U.S.C § 2251(a) and (e), 18 U.S.C. § 2252A(a)(2), 18 U.S.C. § 2422(b), and 18 U.S.C. §§ 2423(b) and (c)[.]"   (Doc. 10-2 at 6; Doc. 10-3 at 26).  The search warrants then specified the categories of items to be included, all of which specifically pertained to child exploitation.   Moreover, because Petitioner's offenses occurred within the Middle District of Florida, the Magistrate Judge had jurisdiction to issue the search warrants. *See* 18 U.S.C. § 2711(3)(A)(i).

Additionally, as to the residential search warrant, the residential search warrant affidavit obtained on September 8, 2016, was premised on Petitioner's offense conduct, beginning on or about 2013 and continuing through on or about at least June 2016. (Doc. 10-4 at 20-30).   During that time, Phillips solicited and paid minor girls in the Philippines to engage in sexually explicit

acts and to live stream the illicit depictions to him. (*Id.* at 26-30). He also paid for images of child sexual abuse as recently as June 2016. (*Id.* at 27). Thus, the Government obtained the residential search warrant three months after Petitioner's last wire transfer to the Philippines in June 2016, and the probable cause was not "stale," as alleged by Petitioner. *See United States v. McBurnette*, 382 F. App'x 813, 815 (11th Cir. 2010) (information in affidavit for warrant authorizing search of defendant's house for child pornography was not stale when victim spoke to police officers almost two years after the alleged sexual contact ended).

Consequently, Petitioner has failed to establish that his counsel acted deficiently with regard to the matters raised in Claims Two, Three, Four, Five, and Six. Petitioner has also failed to demonstrate prejudice. As a result, Claims Two, Three, Four, Five, and Six are denied.

Allegations not specifically addressed herein are without merit.

## IV.  CERTIFICATE OF APPEALABILITY

This Court should grant an application for a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v.*

11

*McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009). However, the petitioner need not show that the appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Petitioner fails to demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. Moreover, Petitioner cannot show that jurists of reason would find this Court's procedural rulings debatable. Petitioner fails to make a substantial showing of the denial of a constitutional right. Thus, the Court will deny Petitioner a certificate of appealability.

## V.    CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1.    The Amended Motion to Vacate, Set Aside, or Correct Sentence (Doc. 6) is **DENIED**.

2.    This case is **DISMISSED with prejudice**.

3.    Petitioner is **DENIED** a certificate of appealability.

4.    The Clerk of the Court is directed to enter judgment in favor of Respondent and to close this case. A copy of this Order and the judgment shall also be filed in criminal case number 6:16-cr-198-JA-GJK.

5. The Clerk of the Court is directed to terminate the section 2255 motion (Criminal Case, Doc. 92) filed in criminal case number 6:16-cr-198-JA-GJK.

DONE and ORDERED in Orlando, Florida on April 8th, 2021.

_____
JOHN ANTOON II
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party

13